

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-24-00144-CR

———————————————

BENEDICTO CISNEROSMARTINEZ, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 297th District Court
Tarrant County, Texas
Trial Court No. 1817648

---

Before Birdwell, Bassel, and Wallach, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

## I. INTRODUCTION

Benedicto Cisnerosmartinez[1] appeals from a judgment of conviction imposing a punishment of imprisonment for life without parole for the commission of the first-degree felony offense of continuous sexual abuse of a child under the age of fourteen (CSA), *see* Tex. Penal Code Ann. § 21.02(b)(1), (b)(2)(A), (h), i.e., his daughter, Amanda,[2] as rendered by the trial court upon the unanimous verdict of the jury. Appellant does not challenge the sufficiency of the evidence supporting the jury's verdict but instead argues in three issues that the charge the jurors considered in reaching their guilty verdict egregiously misstated the law because (1) the application paragraph for the CSA count failed to set forth the culpable mental state required for an affirmative finding of guilt of CSA or any of its predicate offenses; (2) the abstract and application paragraphs for the CSA count merely informed the jury that any predicate offenses it found must occur "during a period of time that is 30 or more days in duration" as an element of the offense, leaving the jury free to find him guilty based upon predicate offenses that occurred "within" thirty days or more of each

---

[1]Appellant's last name's spelling is both Cisnerosmartinez and Cisneros Martinez throughout the appellate record. The style of this opinion reflects the spelling on the judgment of conviction.

[2]We use a pseudonym when referring to the child complainant. *See* Tex. R. App. P. 9.10(a)(3). To further protect her identity, we refer to her family members by their relationship to her. *See* Tex. Const. art. I, § 30(a)(1); 2d Tex. App. (Fort Worth) Loc. R. 7.

other, not "apart" therefrom; and (3) the abstract and application paragraphs of the CSA count permitted individual jurors to find him guilty of predicate offenses separate and distinct from those found by other jurors in violation of the unanimity requirement of the Sixth Amendment as interpreted by *Ramos v. Louisiana*, 590 U.S. 83, 140 S. Ct. 1390 (2020), and *Richardson v. United States*, 526 U.S. 813, 119 S. Ct. 1707 (1999).

Because (1) we have already rejected issues one and three previously, *see Williams v. State*, No. 02-20-00104-CR, 2021 WL 5227167, at *8 & n.11 (Tex. App.—Fort Worth Nov. 10, 2021, no pet.) (mem. op., not designated for publication), (2) Appellant offers no basis for reconsidering those decisions, and (3) any error presented by issue two fails to meet the standard for egregious charge error, we will affirm.

## II. BACKGROUND[3]

Appellant first sexually assaulted Amanda when she was seven years old. At the time, Amanda and her mother (Mother) lived with Appellant in an apartment in Irving. One evening, after watching a movie together, Mother and Amanda's siblings

[3]As observed above, although he pleaded not guilty to the indictment, Appellant does not contest the sufficiency of the evidence presented to support his conviction. Indeed, a child victim's testimony, standing alone, can be sufficient proof of the offense of CSA. *See Keith v. State*, No. 02-24-00034-CR, 2024 WL 4899022, at *5 (Tex. App.—Fort Worth Nov. 27, 2024, no pet.) (mem. op., not designated for publication) (citing Tex. Code Crim. Proc. Ann. art. 38.07(a), (b)(1)). Accordingly, although she was no longer a minor at the time of trial, we summarize Amanda's relevant trial testimony to provide the factual context for considering the charge error Appellant urges for reversal.

went to bed, but Appellant told Amanda to stay on the couch with him. Amanda soon drifted off to sleep, only to be awakened by Appellant who told her to come lie down with him. When she moved to do so, he pulled down his pants, and taking her hand in his, guided her hand to him and moved it over his penis. After he finished, Appellant told Amanda to go wash her hands; he then apologized.

On another occasion in the Irving apartment, Appellant took Amanda into the bedroom she shared with her siblings, and he began tickling her on the bottom bunk of their bunk bed. He then made her touch his penis with her hand before instructing her to put her mouth on his penis, which she did.

The family moved from Irving to Arlington in October or November 2014, when Amanda was eight years old and in third grade. About a week after completing the move, Amanda awoke during the night to find Appellant lying atop her trying to pull her pants down. When he had successfully done so, Appellant attempted to insert his penis in Amanda's vagina—his penis touching her vagina—but Mother interrupted the attempt by entering the bedroom.

On another occasion, over the Christmas break of her third-grade year, Amanda was watching a movie with Appellant and Mother—she and Appellant on one couch, Mother on another—when he put his hand down her pants and put his fingers in her vagina. This was the first occasion that Appellant successfully put something inside Amanda's vagina.

4

Shortly after beginning fourth grade, when she was nine years old, Amanda was alone in her bedroom when Appellant came in, put her on the bed, removed her clothing, and then put his penis in her anus. When it was over, Amanda noticed blood coming from her anus.

On another occasion during her fourth-grade year, Appellant showed Amanda pornography while they were sitting on the couch together. He then pushed her head down and made her give him oral sex by putting her mouth over his penis.

To this point in time, Amanda was unaware that Appellant's attentions were inappropriate. But during a school presentation, a group of presenters spoke to her class about different types of abuse, including sexual abuse. Amanda left the presentation hurt and confused because she realized that what had been happening to her was not appropriate, and she spent some time in the restroom crying before returning to her class.

After the Christmas break of her fourth-grade year, Appellant told Amanda to join him in his bedroom to watch her favorite movie on his computer. After beginning the movie, he placed a tablet between them and started playing a pornographic video on it, encouraging Amanda to watch and telling her that he wanted her to do the things depicted in the pornography to him. He then pulled Amanda on top of him and started kissing her before pulling her clothing down and inserting his penis in her vagina. After, when Amanda went to the bathroom to clean up, she again saw blood.

Appellant assaulted Amanda one more time during fourth grade. On that occasion, Amanda was playing her sibling's drums when Appellant came into the room and told her to come to the bed with him. Once on the bed, Appellant pulled her pants down and then touched, licked, and inserted his fingers into her vagina.[4]

Amanda eventually told her cousin everything that Appellant had been doing to her. The cousin told Amanda's aunt, who then took Amanda to the police to make a report. Appellant was subsequently arrested and charged with CSA, sexual assault of a child, and indecency with a child by sexual contact.

At Appellant's trial, the trial court charged the jury concerning all seven counts of the indictment: the offense of CSA (Count 1) and each of its six predicate offenses of aggravated sexual assault (Counts 2 through 6) and indecency with a child (Count 7). In the abstract paragraphs of the court's charge, the trial court defined the offense of CSA and its predicate offenses in the following manner:

> A person commits the offense of continuous sexual abuse of [a] young child if, during a period of time that is 30 or more days in duration, the person commits two or more acts of sexual abuse regardless of whether the acts of sexual abuse are committed against one or more victims; and at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age.

---

[4]This was the last assault Amanda recalled that took place in the December 2014 through December 2019 CSA timeframe as charged in the indictment. Amanda also testified about subsequent sexual encounters with Appellant, but those encounters were offered by the State only as extraneous-offense evidence.

"Act of sexual abuse" means any act of aggravated sexual assault against a child and/or indecency with a child in a manner other than by touching, including touching through clothing, the breast of a child.

A person commits the offense of aggravated sexual assault if the person intentionally or knowingly causes the penetration of the sexual organ of a child by any means; causes the sexual organ of a child to contact the mouth or sexual organ of another person, including the actor; causes the anus of a child to contact the sexual organ of another person, including the actor; or causes the mouth of a child to contact the sexual organ of another person, including the actor; and the victim is younger than 14 years of age regardless if the person knows the age of the victim at the time of the offense.

A person commits the offense of indecency with a child if, with a child younger than 17 years of age, whether the child is of the same or opposite sex, the person engages in sexual contact with the child or causes the child to engage in sexual contact.

"Sexual contact" means the following acts, if committed with the intent to arouse or gratify the sexual desire of any person: (1) any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child; or (2) any touching of any part of the body of a child, including touching through clothing, any part of the genitals of a person.

"Child" with respect to the offense of aggravated sexual assault means a person younger than 14 years of age.

"Child" with respect to the offense of indecency with a child means a person younger than 17 years of age.

"Actor" means a person whose criminal responsibility is in issue in a criminal action.

A person acts intentionally, or with intent, with respect to the nature of his conduct when it is his conscious objective or desire to engage in the conduct.

A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist.

These definitions and instructions accurately tracked the statutory elements of the offense of CSA and its predicate offenses. *See* Tex. Penal Code Ann. §§ 21.01(2) (sexual contact); 21.02(b)(1), (b)(2)(A), (c) (CSA); 21.11(a)(1), (c) (indecency with a child); 22.021(a)(1)(B), (a)(2)(B), (b)(1) (aggravated sexual assault).

The abstract paragraphs of the court's charge further instructed the jury:

In order to find the defendant guilty of the offense of continuous sexual abuse of [a] young child, as described in Application Paragraph One, you are not required to agree unanimously on which specific acts of sexual abuse, if any, were committed by the defendant or the exact date when those acts were committed, if any. However, in order to find the defendant guilty of the offense of continuous sexual abuse of [a] young child, you must unanimously agree that the defendant, during a period that is 30 or more days in duration, on or about the 28th day of December 2014, through the 27th day of December 2019, as charged in the indictment, committed two or more acts of sexual abuse against a child younger than 14 years of age.

Application Paragraph One thereafter instructed the jury:

Now, if you find from the evidence beyond a reasonable doubt that Benedicto Cisnerosmartinez, hereinafter called defendant, in the county of Tarrant, State of Texas, on or about the 28th day of December 2014 through the 27th day of December 2019, during a period of time that is 30 days or more in duration, did commit at least two acts of sexual abuse against a child younger than 14 years of age, including an act constituting the offense of aggravated sexual assault of a child against [Amanda], by causing the sexual organ of the defendant to contact the sexual organ of [Amanda], and/or by causing the sexual organ of the defendant to contact the anus of [Amanda], and/or by causing the sexual organ of the defendant to contact the mouth of [Amanda], and/or by causing the mouth of the defendant to contact the sexual organ of [Amanda], and/or by causing the finger of the defendant to penetrate the sexual

8

organ of [Amanda], and/or indecency with a child by touching any part of the genitals of [Amanda], and/or by any touching of any part of the body of [Amanda] with any part of the genitals of the defendant, and at the time of the commission of each of these acts of sexual abuse the defendant was 17 years of age or older, then you will find the defendant guilty of the offense of continuous sexual abuse of [a] young child as charged in the indictment.

Application Paragraph One further instructed the jury not to consider Application Paragraphs Two, Three, Four, Five, Six, and Seven, which presented the predicate offenses set forth by the indictment as individual, distinct offenses, if they found Appellant guilty of the offense of CSA.[5] Appellant did not object to any of these definitions or instructions.

During the State's closing argument, counsel referred the jurors back to voir dire when he had first discussed with them the statutory elements of the offense of CSA:

I do want to take a second to talk about some important points, okay? Some of the things we[] covered in voir dire, and I'm sure y'all remember that. Other things are a little bit more fact specific, so I couldn't get into that in voir dire.

And during voir dire, counsel for the State had explained the statutory elements of the offense relevant to this appeal in the following manner:

---

[5]The court's charge so conditioned the predicate offense counts because Appellant could not be convicted of both CSA and its predicate offenses. Tex. Penal Code Ann. § 21.02(e); *see Ramos v. State*, 636 S.W.3d 646, 652 (Tex. Crim. App. 2021) (reaffirming its interpretation of Section 21.02(e) "to prohibit the State from obtaining convictions for both the overarching offense of [CSA] and for any of the predicate offenses . . . shown to have occurred as underlying acts of sexual abuse for purposes of proving that [CSA]"); *Allen v. State*, 620 S.W.3d 915, 922 (Tex. Crim. App. 2021) (reversing indecency with a child by contact conviction as violation of Section 21.02(e) because it did not occur outside the period in which the CSA offense was committed).

When I was talking about elements earlier and indictment, this is what we're talking about, right? These are the allegations that [co-counsel] and I intend to prove in this case. The charges you heard . . . earlier is continuous sexual abuse of a child.

What does that mean? Well, in the State of Texas, it means we have to prove the defendant, right, that we have the right person, that we know that it's this person in Tarrant County, right, because y'all don't live in Parker County, on or about December 28th . . . or 28th, 2014 through December 28th [sic], 2019, all right? So there's a range of period. And within that period, it was more than 30 days or more in duration. I mean, it didn't all happen within the same 30 days. We're talking about a longer period.

And the next allegation is commit two or more acts of sexual abuse against [Amanda], aggravated sexual assault of a child, and indecency with a child.

All right. So continuous sexual abuse is really an umbrella term. . . . Because to make it continuous sexual abuse of a child, you have to have multiple acts, all right? And those are the acts that we are alleging, okay?

. . . . And there's a couple of things I want to talk about in a little bit more detail. One is on or about.

Counsel for the State had explained the importance of the phrase "on or about" by discussing with the venire the observed inability of children to remember exact dates, as opposed to specific events, and how the law only required the State to prove that certain events occurred before the date of the indictment. Indeed, when he had asked one of the venire why he thought the indictment alleged "on or about" and not an exact date, the venireman suggested that an individual may have a difficult time remembering "a correct time line" subjectively, perhaps due to "trying to forget it, so the whole incident may be a time period and not an exact date." Another venireman

had agreed that exact dates would be "harder" for kids "when they are talking about things that are traumatic."

After addressing "on or about" allegations generally, counsel for the State had then specifically explained the temporal separation element of the offense in the following manner:

> So, the second part that I wanted to talk about next and I kind of explained it earlier is when a period of time is 30 days or more in duration means . . . and just like any good lawyer that made it a little wordier than it has to be, right? It just means that we're talking about two acts that happened outside of 30 days at minimum, all right. And there could be more than two acts. But as long as two of them happened outside of 30 days, not within that same period, then it is continuous sexual abuse of a child.

Counsel gave an example of two family trips he took to Disney World and Universal Studios when he was seven and twelve years old, respectively, and confirmed with the venire that those two events did not "happen within the same 30 days."[6]

Counsel for the State reaffirmed the temporal separation element in closing arguments:

> Outside of 30 days, we're just talking about anything outside of 30 days. The same month. . . .
>
> . . . .
>
> Now, as the Court's Charge pointed out to you, all of you have to unanimously believe he's guilty of continuous sexual abuse of a child,

---

[6]At no time during the State's voir dire did defense counsel object that counsel was misstating the elements of the offense or misleading the venire in any way. Nor did defense counsel address with the venire the elements of the offense on behalf of Appellant.

but what that means is that you merely have to agree that at least two acts of sexual abuse happened outside of 30 days.

In response to the State's closing, counsel for Appellant solely challenged Amanda's credibility, never once contesting the State's articulation of how the evidence established the elements of the offense, including the temporal separation element.

As a result of its deliberations, during which it presented the trial court with no notes questioning the definitions and instructions in the abstract and application paragraphs of the court's charge, the jury ultimately found Appellant guilty of CSA. The jury thereafter assessed Appellant a punishment of life in prison for this offense. The trial court sentenced Appellant on the jury's verdict, and Appellant timely filed this appeal.

## III. ANALYSIS

Appellant argues in three issues that the court's charge egregiously misstated the law in three particulars. First, he contends that the application paragraph failed to set forth the culpable mental state required for an affirmative finding of guilt for the offense of CSA or any of its predicate offenses. Second, he complains that the abstract and application paragraphs for this offense merely informed the jury that any predicate offenses they found must occur "during a period of 30 days or more in duration" as an element of the offense, leaving the jury free to find him guilty of CSA based upon predicate offenses that occurred "within" thirty days or more of each other, not "apart" therefrom. Third and finally, Appellant alleges that the abstract and application paragraphs for the offense permitted individual jurors to find him guilty of

12

CSA based upon predicate offenses found by some jurors separate and distinct from those found by other jurors in violation of the unanimity requirement of the Sixth Amendment. We find no merit in any of these arguments.

**A. Standard of Review – Egregious Harm**

A trial court is required to prepare a jury charge that accurately sets out the law applicable to the specific offenses charged. *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007). We must review "all alleged jury-charge error . . . regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). In reviewing a jury charge, we first determine whether error occurred; if not, our analysis ends. *Id.* If, however, the charge is erroneous, then we must decide whether the appellant was harmed. *Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013).

If a defendant complains on appeal about an erroneous instruction in the charge, whether the defendant objected to the trial court determines the applicable standard for assessing harm. *See Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). If a proper objection was made to the trial court regarding a jury-charge error, a reviewing court determines whether the error caused the defendant some harm. *Almanza*, 686 S.W.2d at 171. When, as here, no objection was made, a reviewing court determines whether the error caused the defendant egregious harm. *Nava*, 415 S.W.3d at 298; *Almanza*, 686 S.W.2d at 171.

Egregious harm is a "high and difficult standard" to meet, and such a determination must be "borne out by the trial record." *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015). The analysis for egregious harm is fact specific and is done on a "case-by-case basis." *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013). Errors that result in egregious harm are those "that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylor v. State*, 332 S.W.3d 483, 490 (Tex. Crim. App. 2011). We consider the following factors in evaluating for egregious harm: (1) the entire jury charge; (2) the state of the evidence, including the contested issues and weight of probative evidence; (3) the argument of counsel; and (4) any other relevant information revealed by the entire record. *Almanza*, 686 S.W.2d at 171. "An egregious harm determination must be based on a finding of actual rather than theoretical harm." *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011).

Here, because Appellant did not urge in the trial court any of the objections he now raises on appeal, we will apply an egregious harm analysis for the asserted charge error, if any. *See id.*

## B. Applicable Law – CSA

An individual seventeen years of age or older commits the offense of CSA if: "(1) during a period that is 30 or more days in duration," he commits two or more acts of sexual abuse against a child under fourteen. Tex. Penal Code Ann.

14

§ 21.02(b)(1), (b)(2)(A). Critically, members of the jury are not required to agree unanimously "on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed." *Id.* § 21.02(d). Jurors must agree unanimously, however, that the defendant committed at least two acts of sexual abuse "during a period that is 30 or more days in duration." *Id.*; *see Clark v. State*, No. 02-19-00131-CR, 2020 WL 5949925, at \*3 (Tex. App.—Fort Worth Oct. 8, 2020, no pet.) (mem. op., not designated for publication) ("[T]here must be some proof, whether circumstantial or direct, that the last act of sexual abuse occurred on at least the 29th day after the day of the first act.").

"Sexual abuse" includes aggravated sexual assault of a child and indecency with a child as were charged in this case. *See* Tex. Penal Code Ann. § 21.02(c). A person commits aggravated sexual assault against a child under fourteen if he

> (i) causes the penetration of the anus or sexual organ of a child by any means;

> (ii) causes the penetration of the mouth of a child by the sexual organ of the actor;

> (iii) causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor;

> (iv) causes the anus of a child to contact the mouth, anus, or sexual organ of another person, including the actor; or

> (v) causes the mouth of a child to contact the anus or sexual organ of another person, including the actor[.]

15

*Id.* § 22.021(a)(1)(B). A person commits indecency with a child if he, with the intent to arouse or gratify the sexual desire of any person, touches the anus or genitals (including through clothing) of a child under seventeen or touches any part of the body of a child under seventeen (including through clothing) with the person's anus or genitals. *Id.* § 21.11(a)(1), (c); *see generally Stevens v. State*, No. 02-23-00122-CR, 2024 WL 3978169, at *9–10 (Tex. App.—Fort Worth Aug. 29, 2024, pet. ref'd) (mem. op., not designated for publication) (setting forth the elements of the predicate offenses underlying CSA offense).

**C. Issue One – Omission of Mental Culpability Element**

Appellant initially complains that the application paragraph of the court's charge failed to set forth the required mental culpability element of the offense of CSA and its predicate offenses of aggravated sexual assault and indecency with a child. We have previously rejected this argument in *Williams*, observing that the CSA statute does not impose a mental culpability requirement beyond the mental culpability required for its predicate offenses. 2021 WL 5227167, at *3.

Indeed, the CSA statute requires no additional mens rea because an "act of sexual abuse" as defined by the statute means any act that is a violation of one or more of the predicate offenses, including aggravated sexual assault and indecency with a child. *Id.* (citing Tex. Penal Code Ann. § 21.02(c)). By defining the offense of CSA in terms of predicate offenses, therefore, the statute necessarily incorporates the mental

16

culpability elements of those underlying offenses and need not otherwise prescribe an additional or overarching element of mens rea. *Id.*

Moreover, the fact that Application Paragraph One omitted the mental culpability elements of the predicate offenses of aggravated sexual assault and indecency with a child does not render the court's charge erroneous because the abstract paragraph set forth the mens rea elements for those offenses. *See id.* When we review a charge for alleged error, we must examine the charge as a whole, and while the application paragraph specifies the factual circumstances under which the jury should convict or acquit, "it need not set forth specifically all of the elements necessary to convict a defendant if those elements have been accurately set forth in another section of the charge." *Id.* (quoting *Riley v. State*, 447 S.W.3d 918, 923 (Tex. App.—Texarkana 2014, pet. ref'd)). "And, here, the abstract portion of the jury charge instructed the jury regarding the mens rea requirements for the underlying acts of sexual abuse, and the application paragraph referred back to the definitions of the underlying acts, referring to them by name." *Id.* at *4. We therefore reject Appellant's contention that the trial court erred by omitting all culpable mental states in the charge's application paragraph. *See id.*

Even if we were to assume such error on the part of the trial court, we cannot say that Appellant suffered egregious harm thereby. *See id.* at *2 (setting forth egregious harm factors). In considering the state of the evidence, and as set forth above, we note that Amanda testified that on numerous occasions over the course of

17

her third- and fourth-grade years and in two separate and distinct locations, Appellant forced her to engage in oral, vaginal, and anal sex, and on at least two of those occasions he caused her to bleed. *See Keith*, 2024 WL 4899022, at *5 (holding testimony of child victim, standing alone, can be sufficient proof of CSA offense). "As for the arguments of counsel, there was no mention of any of the mens rea requirements during closing arguments; rather, the closing arguments focused on whether [Appellant] had committed the abuse or not." *Williams*, 2021 WL 5227167, at *4. Finally, as to other relevant information from the trial, during voir dire, counsel for the State specifically told the venire that the predicate offense of aggravated sexual assault of a child required that Appellant "intentionally or knowingly" commit the assault and that the predicate offense of indecency with a child required that he "intentionally" engage in sexual contact with the child "with the intent to arouse or gratify the sexual desire of any person."

Based upon our review of these factors, we cannot say that the alleged charge error egregiously harmed Appellant. *See id.*

## D. Issue Two – Latent Ambiguity of Duration Element

Appellant next complains not that the trial court's charge incorrectly presented the elements of the CSA offense but that, in essence, its accurate use of the phrase "during a period of time that is 30 or more days in duration" in conjunction with the dates of the alleged abuse spanning December 28, 2014, through December 27, 2019, created an ambiguity that, left unaddressed by further instruction, permitted the jury

18

to find predicate offenses that occurred "within" instead of thirty days "apart" from one another as required by the statute. *See Nicholson v. State*, 682 S.W.3d 238, 242 (Tex. Crim. App. 2024) ("Statutory language is ambiguous if its plain meaning is 'doubtful' because it is reasonably 'subject to two [or more] constructions.'" (quoting *Sparks v. State*, 174 S.W. 351, 352 (Tex. Crim. App. 1915))). Assuming without deciding the existence of such an ambiguity, we conclude that the alleged charge error did not result in egregious harm to Appellant.

In a recent decision, our sister court in Eastland described the current split among the courts of appeals:

> The Sixth Court of Appeals aligns with the Seventh Court of Appeals in holding that the express language of the statute does not make clear that the first and last acts must occur thirty or more days apart. *See Lewis v. State*, No. 06-21-00021-CR, 2022 WL 630288, at *6 (Tex. App.—Texarkana Mar. 4, 2022, pet. ref'd) (mem. op., not designated for publication) ("[T]he jury could have easily read the instruction as directing it to find Lewis guilty if (1) there were thirty or more days between the dates in the indictment . . . and (2) during that time, Lewis sexually abused A.B. on two or more occasions."). In both *Lewis* and *Turner*, however, the courts found that the appellants were not egregiously harmed by the charge error. *Lewis*, 2022 WL 630288, at *6; *Turner* [*v. State*], 573 S.W.3d [455,] 464 [(Tex. App.—Amarillo 2019, no pet.)]. The First Court of Appeals in *Smith v. State*, 340 S.W.3d 41, 50–53 (Tex. App.—Houston [1st Dist.] 2011, no pet.)[,] likewise held that the appellant was not egregiously harmed by the language: *"on or about the 1st day of December, 2007, through the 1st day of September, 2008, which said time period being a period that was 30 days or more in duration."*
>
> By contrast, the Third, Fourth, Fifth, Thirteenth, and Fourteenth Courts of Appeals have refused to find similar jury instructions erroneous. *See Jones v. State*, No. 05-22-00872-CR, 2024 WL 1757249, at *13–14 (Tex. App.—Dallas Apr. 24, 2024, . . . pet. [ref'd]) (mem. op., not designated for publication); *Perez v. State*, 689 S.W.3d 369, 378–81

(Tex. App.—Corpus Christi–Edinburg 2024, no pet.) . . . ; *Lewis v. State*, 693 S.W.3d 453, 461–66 (Tex. App.—Houston [14th Dist.] . . . 2023, pet. ref'd); *Hernandez-Silva v. State*, No. 03-19-00219-CR, 2020 WL 4726632, at *7–8 (Tex. App.—Austin Aug. 14, 2020, pet. ref'd) (mem. op., not designated for publication); *McKinney v. State*, No. 05-14-01350-CR, 2016 WL 3963369, at *16 (Tex. App.—Dallas July 18, 2016, pet. ref'd) (mem. op., not designated for publication); *Quintero v. State*, No. 04-13-00596-CR, 2015 WL 1914595, at *1–2 (Tex. App.—San Antonio Apr. 15, 2015, pet. ref'd) (mem. op., not designated for publication); *Knowles v. State*, No. 04-12-00180-CR, 2013 WL 1149063, at *5 (Tex. App.—San Antonio Mar. 20, 2013, pet. ref'd) (mem. op., not designated for publication).

*Poor v. State*, No. 11-22-00221-CR, 2024 WL 4374998, at *5–6 (Tex. App.—Eastland Oct. 3, 2024, pet. filed) (op. on reh'g) (footnotes omitted) (agreeing "with the majority of our sister courts that the challenged charge language is not erroneous").

Summarizing, the majority have held no ambiguity exists in the statute's use of the phrase "during a period that is 30 or more days in duration" in conjunction with an alleged overarching period of abuse, while the minority concludes that a failure to adequately distinguish between the alleged overarching period of abuse and the "30 days or more" period of abuse—or "temporal separation" element of the CSA offense—permits the "within" finding hypothesized by Appellant but does not result in egregious harm if the charge and the State otherwise emphasize that the jury must find the predicate offenses "apart" from one another. In *Stevens* and *Williams*, we assumed the charge error urged by Appellant but reached the same conclusion as the minority concerning the absence of egregious harm. *See Stevens*, 2024 WL 3978169, at *13–15; *Williams*, 2021 WL 5227167, at *6–7. We do so again.

Looking at the charge as a whole, the application paragraph clearly distinguished between the overarching alleged period of abuse and the temporal separation element of the CSA offense, using "on or about" and "through" to describe the former as a period of five years in duration to distinguish it from the latter which tracks the statutory language:

> Now, if you find from the evidence beyond a reasonable doubt that Benedicto Cisnerosmartinez, hereinafter called defendant, in the county of Tarrant, State of Texas, on or about the 28th day of December 2014 through the 27th day of December 2019, *during a period of time that is 30 days or more in duration, did commit at least two acts of sexual abuse* against a child younger than 14 years of age, . . . then you will find the defendant guilty of the offense of continuous sexual abuse of [a] young child as charged in the indictment. [Emphasis added.]

Indeed, the "temporal separation" language clearly qualified the "commission of acts" language and not the overarching period of sexual abuse.

And the abstract paragraphs even more clearly confirmed this distinction by placing the "30 days or more" period "within" and not "coterminous with" the overarching alleged period of abuse:

> [I]n order to find the defendant guilty of the offense of continuous sexual abuse of [a] young child, you must unanimously agree that the defendant, *during a period that is 30 or more days in duration, on or about the 28th day of December 2014, through the 27th day of December 2019*, as charged in the indictment, *committed two or more acts of sexual abuse* against a child younger than 14 years of age. [Emphasis added.]

Moreover, during voir dire, and specifically referenced during closing argument, counsel for the State expressly explained that the "during a period that is 30 or more

21

days in duration" language imposed a temporal separation requirement for the offense:

> So there's a range of period. And within that period, it was more than 30 days or more in duration. I mean, it didn't all happen within the same 30 days. We're talking about a longer period.
>
> . . . .
>
> . . . [A] period of time . . . 30 days or more in duration means . . . we're talking about two acts that happened outside of 30 days at minimum, all right. And there could be more than two acts. But as long as two of them happened outside of 30 days, not within that same period, then it is continuous sexual abuse of a child.

Counsel gave an example of two family trips he took when he was seven and twelve years old, respectively, and confirmed with the venire that those two events did not "happen within the same 30 days."

Finally, during closing, counsel for the State reaffirmed the temporal separation element of the CSA offense by identifying four distinct timeframes of sexual abuse experienced by Amanda that were separated by at least thirty days:

> One of those things when we talk about continuous sexual abuse of a child, and specifically the facts of this case, you'll remember I told you it was an umbrella, right? It covered multiple types of acts of sexual abuse. Well, under that umbrella in the State of Texas is also the offenses committed in Irving. You are allowed to consider those as a part of the continuous sexual abuse charge. So although we're here in Tarrant County and there are incidents that happened in Tarrant County, the law says you can include those. So what does that mean for y'all? You have four distinct times to think about for these acts of sexual abuse. Irving, they lived there before third grade because she moved to Arlington in third grade. Third grade when they just moved to Arlington and the abuse that happened there. The beginning of fourth grade before the teacher came to school to tell her that the abuse was bad. We know

22

incidents happened before that in fourth grade. And then finally, after that, we know the abuse didn't stop based on [Amanda's] testimony.

Why do I point that out to y'all? Well, it sounded like common sense in voir dire, right? *Outside of 30 days, we're just talking about anything outside of 30 days.* The same month. I just want to make it abundantly clear to y'all, this is not a case in which that is an issue. This is abuse that has stemmed years of her life.

. . . .

Now, as the Court's Charge pointed out to you, all of you have to unanimously believe he's guilty of continuous sexual abuse of a child, *but what that means is that you merely have to agree that at least two acts of sexual abuse happened outside of 30 days.* So it's not that all 12 who make up the jury have to agree to the exact acts and the exact dates. In a case like this with chronic sexual abuse, it's almost impossible. Like [the forensic interviewer] told you, children who experience chronic sexual abuse, they're not able to detail every single act that has ever happened to them because it becomes their new reality. That's the problem with abuse like this. [Emphasis added.]

Given the distinct temporal details in Amanda's testimony, the totality of the instructions in the charge, and the voir dire and closing argument of counsel for the State (without any indication from defense counsel or jury note of any confusion), we cannot conclude that this alleged charge error egregiously harmed Appellant, and we overrule his second issue. *See Stevens*, 2024 WL 3978169, at *13–15 (concluding no egregious harm when the evidence did not describe acts of abuse that occurred within 30 days of each other, the abstract portion of the court's charge distinguished between the overarching alleged period of abuse and the temporal separation period, and counsel for the State made it clear that the distinct acts of sexual abuse had to have occurred "30 days apart"); *Williams*, 2021 WL 5227167, at *6–7 (concluding no

23

egregious harm when evidence identified distinct episodes of sexual abuse during fourth and fifth grade and when counsel for the State explained the temporal separation element to the venire and then categorically stated in closing that the jury could not convict unless jurors believed "that there were at least two sexual acts . . . that were committed in a duration more than 30 days").

## E. Issue Three – Unanimity

Appellant finally complains that the court's charge permitted individual jurors to find him guilty of CSA based upon predicate offenses found by some jurors separate and distinct from those found by other jurors in violation of the unanimity requirement of the Sixth Amendment. Because, as his counsel acknowledges in his brief, we have already answered this question against him, including his specific reliance upon *Ramos* and *Richardson*, we will quote our conclusion in *Williams*, as we did in *Stevens*:

> Williams asks us to reconsider our prior holdings in light of the United States Supreme Court's opinion in *Ramos v. Louisiana*. In *Ramos*, the Court found that the Sixth Amendment right to a jury trial, as incorporated against the states by the Fourteenth Amendment, requires a unanimous verdict to convict a defendant of a serious offense. Accordingly, the Court declared unconstitutional certain laws in Louisiana and Oregon that permitted convictions of serious offenses on jury verdicts agreed to by only ten of twelve jurors.
>
> Having reviewed *Ramos*, we are unpersuaded by Williams's argument that the holding in *Ramos* somehow invalidates our prior holdings with respect to whether the CSA statute requires unanimity as to the underlying offenses. Our prior holdings did not turn on the same type of Sixth-Amendment issue as *Ramos*; rather, they turned on whether "the specific acts of sexual abuse alleged to have constituted CSA are not

24

separate elements of the offense subject to the unanimity requirement." We do not see how *Ramos* changes our precedent that the underlying offenses are not separate elements subject to the unanimity requirement.

*Stevens*, 2024 WL 3978169, at *15 (citing *Williams*, 2021 WL 5227167, at *7–8, *8 n.11 (declining to find charge error on the basis of lack of unanimity when urged to do so on the basis of *Ramos* and *Richardson*)). Appellant has not provided any basis for reconsidering our position, so we continue to stand by this reasoning.

Applying the holdings of *Stevens* and *Williams* to the facts of this case, we hold that the trial court did not err in instructing the jury that it did not need to unanimously agree about the underlying acts of sexual abuse to find Appellant guilty of the offense of CSA.

## IV. CONCLUSION

Having overruled all of Appellant's issues, we affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: July 3, 2025

25